IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

COLUMBIA DIVISION

| | |
|---|---|
| Diane Kirven, on behalf of herself and all others similarly situated, ) ) ) | C/A No. 3:11-2149-MBS |
| Plaintiff, ) ) | |
| vs. ) ) | **ORDER AND OPINION** |
| Central States Health & Life Co. of Omaha and Philadelphia American Life Insurance Company, ) ) ) ) | |
| Defendants. ) | |

On August 15, 2011, Plaintiff Diane Kirven filed this class action against Defendants Central States Health & Life Co. of Omaha ("Central States") and Philadelphia American Life Insurance Company ("Philadelphia American") pursuant to 28 U.S.C. § 1331, alleging that she and others similarly situated were wrongfully denied full benefits under "cancer and specified disease" supplemental insurance policies issued by Defendants prior to June 4, 2008. This order serves to memorialize the court's rulings made at a fairness hearing on February 23, 2015.

I. FACTS AND PROCEDURAL HISTORY

The facts are set out in detail in the court's preliminary order granting class certification and approving the parties' settlement, which order was filed on December 12, 2014. Briefly, Central States marketed certain "cancer and specified disease" supplemental insurance policies that promised to pay the insured a defined benefit based upon the "actual charges" for certain medical and pharmaceutical treatments. The term "actual charges" was not defined in the policies. Initially, Central States paid benefits based upon the actual charges represented on medical provider bills,

without reference to any reduction in the charges negotiated between the medical provider and the insured's primary insurer. On December 31, 2005, Philadelphia American acquired Central States' South Carolina "cancer and specified disease" supplemental insurance policies, and continued Central States' practice of paying benefits without reference to any reduction in charges negotiated by the primary insurer.

On November 29, 2007, the Court of Appeals for the Fourth Circuit issued its opinion in Ward v. Dixie Nat'l Life Ins. Co., 257 F. App'x 620 (4th Cir. 2007). In Ward, an insured had purchased a supplemental cancer treatment benefit policy from Dixie National Life Insurance Company in 1990. As in the within action, the term "actual charges" was not defined in the insured's policy. Also as in the within action, the insurer initially calculated benefits based on the amounts billed to patients by their medical providers, "even though providers often have agreements with certain insurers to accept as payment-in-full an amount less than that reflected on the patient's bill." Id. The litigation arose after the insurer changed its benefit payment practice in 2001 and began to calculate benefits in light of any pre-negotiated discount rate for treatments.

The Fourth Circuit found the term "actual charges" to be patently ambiguous because there was "nothing in the policy to indicate whether 'actual charges' is best understood to mean the amount actually billed or the amount actually owed." Id. at 625. Consequently, the Fourth Circuit construed the ambiguity in favor of the insured. Id. at 627.

In response to Ward, the South Carolina Legislature enacted S.C. Code Ann. § 38-71-242, effective June 4, 2008. Section 38-71-242 provides, in pertinent part:

> (A)(1) When used in any individual or group specified disease insurance policy in connection with the benefits payable for goods or services provided by any health care provider or other designated person or entity, the terms "actual charge", "actual

2

charges", "actual fee", or "actual fees" shall mean the amount that the health care provider or other designated person or entity:

> (a) agreed to accept, pursuant to a network or other agreement with a health insurer, third-party administrator, or other third-party payor, as payment in full for the goods or services provided to the insured;

> (b) agreed or is obligated by operation of law to accept as payment in full for the goods or services provided to the insured pursuant to a provider, participation agreement, or supplier agreement under Medicare, Medicaid, or any other government administered health care program, where the insured is covered or reimbursed by such program; or

> (c) if both subitems (a) and (b) of this subsection apply, the lowest amount determined under these two subitems; and

(2) must include any applicable deductibles, coinsurance requirements, or co-pay requirements applicable to the insured under any government administered health care program or any private primary health insurance coverage for the health care provider's goods or services provided to the insured.

Relying on section 38-71-242, Philadelphia American commenced calculating benefits based upon the statutory definition of "actual charges." Plaintiff thereafter brought this action seeking a declaration, among other things, that section 38-71-242 did not apply to supplemental cancer insurance policies entered into between Defendants and policyholders prior to June 4, 2008 (First Cause of Action); and asserting breach of contract (Second Cause of Action).

On consent motion of the parties, the court certified the following questions to the South Carolina Supreme Court on February 5, 2013, pursuant to Rule 244 of the South Carolina Rules of Appellate Procedure:

> 1. Can the definition of "actual charges" contained within S.C. Code Ann. § 38-71-242 be applied to insurance contracts executed prior to the statute's effective date?

> 2. Can the South Carolina Department of Insurance mandate the application of "actual charges" definition in S.C. Code Ann. § 38-71-242 to policies already

in existence on the statute's effective date by prohibiting an insurance company from paying claims absent the application of that definition?

By opinion dated June 25, 2014, the supreme court answered both questions in the negative. The supreme court found that neither the presumption against retroactivity nor the doctrine of constitutional avoidance bars the application of section 38-71-242 to Plaintiff's claims, because Plaintiff's claims arose after the statute's June 4, 2008 effective date. However, the supreme court agreed that section 38-71-242's definition of "actual charges" cannot be applied to insurance contracts entered into prior to the June 4, 2008 effective date because such an application violates the Contract Clause of both the state and federal constitutions. ECF No. 81.

On November 4, 2014, the parties filed a petition for preliminary approval of certification and settlement, which petition was supplemented on November 14, 2014. ECF Nos. 95, 98. The court held a hearing on December 8, 2014, and directed the parties to make certain changes and clarifications with respect to the notice package to be sent to the putative class members. See ECF No. 101. On December 12, 2014, the court issued an order preliminarily granting class certification and approving the settlement, and appointing class counsel. Further, the court set a fairness hearing for February 23, 2015. ECF No. 102. The parties filed a final supplement to the petition on December 16, 2014. ECF No. 104.

The approved class notice package was sent to the thirty-seven members of a class described as:

> All persons insured at any time from August 21, 2008 to the present by Defendant Central States Health & Life Co. of Omaha "cancer and specified disease" policies executed in the State of South Carolina and who have filed a claim for benefits relative to the "actual charges" provisions contained within these policies that has been paid or should be paid by Defendant Philadelphia American Life Insurance Company.

4

Excluded from the class are the officers, directors, and employees of the Defendants.

ECF No. 1, 2.

The class notice package was written in plain English and included (1) a description of the settlement class; (2) a description of the proposed settlement; (3) the names of class counsel; (4) a fairness hearing date; (5) a statement of the deadlines for filing objections to the settlement and for filing requests of exclusion; (6) the consequences of such exclusion; (7) the consequences of remaining in the settlement class; (8) information regarding class counsel's fees and expenses; and (9) instructions regarding how to obtain additional information. Specifically, the class members were notified that they were entitled to receive a sum for the difference between payments made based on "billed charges" pursuant to S.C. Code Ann. § 38-71-242, and "actual charges" submitted, as was the practice of Defendants prior to the enactment of section 38-71-242. The total amount for all past claims was contemplated to be $510,080.22. The class notice package provided for $22,919.00 to be paid to Plaintiff as compensation for acting as class representative, which amount included any amount she could recover under the claims process. The class notice package also notified the class members that class counsel would apply to the court for an award of attorneys' fees and expenses not to exceed $168,326.47. The parties contemplated that, with the exception of Plaintiff's benefit, the attorneys' fees and expenses would be deducted from each class member's benefit on a pro rata basis. See ECF No. 101-2.

## II. DISCUSSION

### A. Final Class Certification

For the reasons stated in the court's order filed December 12, 2014, the court finds that the class should be certified in accordance with Fed. R. Civ. P. 23(a) and (b)(3).

B.    <u>Final Approval of Settlement</u>

Under Fed. R. Civ. P. 23(e), the claims of a certified class may be settled only with the court's approval.  The following procedures apply to a proposed settlement:

> (1) The court must direct notice in a reasonable manner to all class members who would be bound by the proposal.

> (2) If the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate.

> (3) The parties seeking approval must file a statement identifying any agreement made in connection with the proposal.

> (4) If the class action was previously certified under Rule 23(b)(3), the court may refuse to approve a settlement unless it affords a new opportunity to request exclusion to individual class members who had an earlier opportunity to request exclusion but did not do so.

> (5) Any class member may object to the proposal if it requires court approval under this subdivision (e); the objection may be withdrawn only with the court's approval.

1.    <u>Notice</u>

Proper notice is "'an elementary and fundamental requirement of due process.'" <u>Snider Int'l Corp. v. Town of Forest Heights</u>, 739 F.3d. 140, 146 (4th Cir. 2014) (quoting <u>Mullane v. Cent. Hanover Bank & Trust Co.</u>, 339 U.S. 306, 314-15 (1950)).  Notice must not be a mere gesture, but rather an effort reasonably calculated to effect actual notice.  <u>Id.</u> (citing <u>Mullane</u>, 339 U.S. at 315).  Notice satisfies due process where it either (1) "'is in itself reasonably certain to inform those affected'" or (2) "'where conditions do not reasonably permit such notice, . . . the form chosen is not substantially less likely to bring home notice than other of the feasible and customary substitutes.'" <u>Id.</u> (quoting <u>Mullane</u>, 339 U.S. at 315).  The use of mail satisfies the notice element of due process. <u>Id.</u> (citing cases).

On February 3, 2015, counsel for Defendants filed a notice indicating that the approved class notice package had been mailed on December 23, 2014 to the last known address of each class member.  ECF No. 105.  At the hearing, Defendant's counsel affirmed that no class notice package had been returned undeliverable and that neither he nor class counsel were aware of any class members who had not received the class notice package.  The court finds that the notice requirement has been satisfied.

      2.    <u>Finding that settlement is fair, reasonable, and adequate</u>.

"'The purpose of Rule 23(e) is to protect the unnamed members of the class. Under Rule 23(e), a district court acts as a fiduciary, guarding the claims and rights of the absent class members.'" <u>McDaniels v. Westlake Services, LLC</u>, C/A No. ELH-11-1837, 2014 WL 556288, *8 (D. Md. Feb. 7, 2014) (quoting <u>Ehrheart v. Verizon Wireless</u>, 609 F.3d 590, 595 (3d Cir. 2010)). "'To determine whether a proposed settlement is fair, reasonable, and adequate, the court must examine whether the interests of the class are better served by the settlement than by further litigation.'" <u>Id.</u> (quoting Annotated Manual For Complex Litigation (Fourth) § 21.61 at 487 (2011)). The most important factor is a comparison of the terms of the proposed settlement with the likely recovery that the plaintiffs would realize if they were successful at trial.  <u>Id.</u> (quoting <u>Blackman v. District of Columbia</u>, 454 F. Supp. 2d 1, 8 (D.D.C. 2006)).  In <u>Deem v. Ames Tre Temper, Inc.</u>, C/A No. 6:10-cv-1339, 2013 WL 2285972, *1 (S.D.W. Va. May 23, 2013), the district court considered the following factors:  (1) the extent of discovery that has taken place and the stage of the proceedings; (2) bad faith or collusion and circumstances surrounding the negotiation; (3) the experience of counsel; (4) objections from class members; (5) the relative strength of the plaintiffs' case on the merits; (6) the existence of any difficulties of proof or strong defenses the plaintiffs are

likely to encounter if the case goes to trial; (7) the anticipated duration and expense of additional litigation; (8) the solvency of the defendants and the likelihood of recovery on a litigated judgment.

        a.    <u>Extent of discovery</u>.  This factor requires the court to determine whether the case was "'well-enough developed for [the parties] to appreciate the full landscape of their case[.]'" <u>Domonoske v. Bank of America, N.A.</u>, 790 F. Supp. 2d 466, 473 (W.D. Va. 2011) (quoting <u>In re The Mills Corp. Sec. Litig.</u>, 265 F.R.D. 246, 254 (E.D. Va. 2009)).  Here, settlement was proposed approximately three years after the commencement of litigation and after the South Carolina Supreme Court addressed the application of S.C. Code Ann. § 38-71-242 on the policies at issue. Resolution of the matter was accomplished after the legal issue underlying the complaint was answered by the South Carolina Supreme Court.  Also apparent from filings with the court is that inquiry was fully made to identify the policies at issue, potential class members, and amounts due and owing to each.  The court finds that discovery was adequate to develop the record and ascertain the merits of the case.

        b.    <u>Bad faith or collusion</u>.  Because of the danger of counsel's compromising a suit for an inadequate amount for the sake of ensuring a fee, the court is obliged to determine that the settlement was reached as a result of good-faith bargaining at arm's length.  <u>In re Montgomery Cnty. Real Estate Antitrust Litig.</u>, 83 F.R.D. 305, 315 (D. Md. 1979) (citing <u>Percodani v. Riker-Maxson Corp.</u>, 50 F.R.D. 473, 477 (S.D.N.Y. 1970)).  Absent evidence to the contrary, the court may presume that settlement negotiations were conducted in good faith and that the resulting agreement was reached without collusion.  <u>Muhammad v. Nat'l City Mortg., Inc.</u>, C/A No. 2:07-0428, 2008 WL 5377783, *4 (S.D.W. Va. Dec. 19, 2008) (citing Newberg on Class Actions § 11.28

at 1159 (3d ed. 1992); Polar Int'l Brokerage Corp. v. Reeve, 187 F.R.D. 108, 112 (S.D.N.Y. 1999) (noting that the court must look at the negotiating process leading to settlement in order to ensure that "the compromise be the result of arms'-length negotiations and that plaintiff's counsel have possessed the . . . ability . . . necessary to effectively represent the class's interests")). In this case, the settlement was consummated as the result of a hard-fought, arm's length negotiation that took place over several weeks. The class members are to be fully reimbursed for underpayments made under the "cancer and specified disease" supplemental insurance policies, less a pro rata share of the attorneys' fees. The court knows of no facts or circumstances that would suggest the parties or attorneys have acted in bad faith or colluded in any respect.

        c.     Experience of counsel. The inquiry into the adequacy of legal counsel focuses on whether counsel is competent, dedicated, qualified, and experienced enough to conduct the litigation and whether there is an assurance of vigorous prosecution. In re Serzone Prod. Liab. Litig., 231 F.R.D. 221, 239 (S.D.W. Va. 2005) (citing McGlothlin v. Connors, 142 F.R.D. 626, 633-34 (W.D. Va. 1992) (analyzing class counsel under Fed. R. Civ. P. 23(a)). As noted at the time class counsel were appointed, class counsel have experience with class actions and in particular litigation regarding the contractual term "actual charges." Class counsel also have appeared before this court in other complicated class action matters. The court finds reliable opinions rendered by both class counsel and Defendants' counsel that the settlement is fair and adequate. While the opinions and recommendations of experienced counsel are not to be blindly followed by the trial court, such opinions should be given weight in evaluating the proposed settlement. Flinn v. FMC Corp., 528, F.2d 1169, 1174 (4th Cir. 1975) (citing cases). Moreover, Plaintiff informed the court at the fairness hearing that she was completely satisfied with the representation provided by class counsel. No class

member contested the appointment of class counsel. The court finds that this factor has been satisfied.

        d.      Objections from class members. An absence of objections and a small number of opt-outs weighs significantly in favor of a settlement's adequacy. The Mills Corp., 265 F.R.D. at 257 (citing In re MicroStrategy, Inc. Sec. Litig., 148 F. Supp. 2d 654 (E.D. Va. 2001)). In this case, only one class member opted out of the proposed class. No class member filed objections to the proposed settlement. The court finds that this factor has been met.

        e.      Relative strength of Plaintiff's case, difficulties of proof or strong defenses, and duration and expense of additional litigation. Essentially, the court should weigh the benefits of the settlement to the class against the strength of the defense, and the expense and uncertainty of the litigation while accounting for class objections. Domonoske v. Bank of America, N.A., 790 F. Supp. 2d 466, 474 (W.D. Va. 2011) (citing The Mills Corp., 265 F.R.D. at 255-58). Here, the South Carolina Supreme Court has made a determination that section 38-71-242 violates the Contracts Clause and improperly was applied to limit the class members' various claims under their "cancer and specified disease" supplemental insurance policies. Thus, there is no question as to the merits of the case. Likewise, Plaintiff and the class members possess no difficulties of proof and will meet no strong defenses.

        The class members are being fully compensated, less a pro rata share of attorneys' fees. The fact that the class members are receiving full relief is consistent with the strength of their case, and supports a finding that the settlement is fair, adequate, and reasonable.

        With respect to additional litigation, the court must weigh the settlement in consideration of the substantial time and expense litigation of this sort would entail if a settlement was not reached.

The Mills Corp., 265 F.R.D. at 256. "This factor is based on a sound policy of conserving the resources of the Court and the certainty that [avoiding] 'unnecessary and unwarranted expenditure of resources and time benefit[s] all parties.'" Id. (quoting In re Computron Software, Inc., 6 F. Supp. 2d 313, 317 (D.N.J. 1998)). In this case, should class members pursue litigation in state court, they would be required to wait for a state court docket to proceed through to settlement and most likely would have to pay attorneys' fees and costs for individual litigation far in excess of the pro rata share contemplated herein. The benefits of settlement outweigh the expense and duration of further litigation.

The court finds that these three factors have been satisfied.

f.    Solvency of Defendants. When comparing the amount of the settlement with the potential liability of the settling defendants, it is also appropriate to consider those defendants' abilities to pay any subsequent judgment and the availability or lack thereof of insurance proceeds. S.C. Nat'l Bank v. Stone, 139 F.R.D. 335, 340 (D.S.C. 1991) (citing Jiffy Lube, 927 F.2d at 159). The court has received no suggestions regarding any lack of solvency on the part of Defendants. In point of fact, counsel for Defendants has represented to the court that Defendants stand ready to disburse the appropriate sums to class members upon entry of the court's final order.

For all these reasons, the court finds the proposed settlement to be fair, adequate, and reasonable.

3.    Any Agreement Made in Connection with the Proposal. Rule 23(e)(3) tasks the court with inquiring as to any related undertakings that may have influenced the terms of the settlement by trading away possible advantages for the class in return for advantages for others. Advisory Committee Notes to Fed. R. Civ. P. 23, 2003 Amendments. In this case, counsel represented at the

11

hearing that  no agreements other than the settlement proposal presented to the class have been negotiated.

      4.      <u>New opportunity to request exclusion</u>.  This factor is triggered when settlement terms are not known at the time of class certification under Rule 23(b)(3).  <u>Id.</u>  Here, notice of preliminary class certification and the proposed settlement were made to class members simultaneously.  The putative class members were given specific instructions as to the procedures that would allow anyone so desiring to opt-out of the class and settlement, or to posit objections to the settlement. Specifically, the class notice package contained the following language:

### SECTION 6: EXCLUSION FROM THE CLASS

If you do not wish to be bound by the terms of the settlement, you may request that you be excluded from the Class. If you request exclusion, you will not be eligible to receive any of the benefits of the proposed settlement if it is approved, nor will you be able to object to the terms of the settlement. To request exclusion, you must comply with the requirements described in this section.

To request exclusion, you must send a formal, written request for exclusion to the following address:

**Philadelphia American Life Ins. Co.**
**Exclusion Request**
**P.O. Box 4884**
**Houston, TX 77210-4884**

You must include in your request for exclusion *(i)* your name, address, telephone number, and social security number, *(ii)* the policy number of your Cancer Policy that makes you a member of the Class, *(iii)* a statement that you want to be excluded from the Class, *(iv)* the name of the case and the case number appearing on the first page of this Notice, and *(v)* your signature.

Please be sure to write the words "EXCLUSION REQUEST" on the lower left-hand corner of the front of the envelope.

**YOUR WRITTEN REQUEST FOR EXCLUSION MUST BE RECEIVED BY THE SETTLEMENT ADMINISTRATOR NO LATER THAN JANUARY 29,**

**2015. OTHERWISE, YOUR REQUEST WILL BE UNTIMELY, YOU WILL LOSE YOUR RIGHT TO REQUEST EXCLUSION AND YOU WILL BE BOUND BY THE SETTLEMENT AND BY ALL ORDERS AND JUDGMENTS IN THIS LAWSUIT.**

Remember, if you exclude yourself from the Class and the proposed settlement is approved by the Court, you will not receive any settlement consideration or be permitted to participate in the proposed settlement.

ECF No. 101-2, 8-9.

The court concludes that an additional opportunity to request exclusion is not mandated.

5.    <u>Opportunity to Object</u>.  The class notice package provide instructions on how class members could object to the settlement:

**SECTION 7: FAIRNESS HEARING, RIGHT TO OBJECT
TO PROPOSED SETTLEMENT AND RIGHT TO APPEAR**

. . . .

**B. YOUR RIGHT TO OBJECT**

If you have not requested exclusion, you may file with the Court a written objection to any aspect of the proposed settlement. Your written objection must include: *(i)* your name, address and telephone number; *(ii)* the policy number of the Cancer Policy that makes you a member of the Class; *(iii)* the name of this case and the case number, and *(iv)* a statement of each objection detailing the specific reasons, if any, for each objection, including the legal and factual support you wish to bring to the Court's attention and any evidence you wish to introduce in support of the objection(s). If the objection is presented through an attorney, the written objection must also include: *(i)* the identity and number of Class Members represented by your counsel; *(ii)* the number of such represented Class Members who have opted out of the settlement; *(iii)* the number of such represented Class Members who have remained in the settlement and have not objected; and *(iv)* the date your counsel assumed representation for you.

**YOU MUST FILE YOUR WRITTEN OBJECTION (ALONG WITH YOUR SUPPORTING BRIEF, ANY EVIDENCE, AND ANY OTHER REQUIRED MATERIALS) WITH THE CLERK OF THE COURT *AND* SEND COPIES OF THOSE MATERIALS TO CLASS COUNSEL AND DEFENDANTS'**

13

**COUNSEL FOR RECEIPT NO LATER THAN FEBRUARY 13, 2015, AT THE FOLLOWING ADDRESSES:**

Clerk of the Court
United States District Court
District of South Carolina
Matthew J. Perry, Jr. Courthouse
901 Richland Street
Columbia, South Carolina 29201

John T. Lay, Jr.
Gallivan, White & Boyd P.A.
1201 Main Street, Suite 1200
Columbia, SC 29201
803 779 1833 (main)
803 779 1767 (fax)

Robert L. Harris
RLHarrisLaw
3917 Edgewater Ct
Richardson, Texas 75082-5604
972 349 9991 (main)
972 584 6113 (fax)

Counsel for Defendants

And:

Richard A. Harpootlian
Christopher P. Kenney
RICHARD A. HARPOOTLIAN, P.A.
1410 Laurel Street
Post Office Box 1090
Columbia, South Carolina 29202
(803) 252-4848 (main)
(803) 252-4810 (fax)

Tobias G. Ward, Jr
Tobias G. Ward, Jr., PA
6 Calendar Court, Suite 3
Post Office Box 6138
Columbia, South Carolina 29260
(803) 708-4200 (main)

14

(803) 403-8754 (fax)

Counsel for Plaintiff

Objections received after **February 13, 2015**, or which do not specifically comply with the provisions of this Section will not be considered by the Court, and will be deemed to have been waived.

Any judgment entered in this action, whether favorable or unfavorable to the Class, will include and be binding on all Class Members who have not requested exclusion from the Class (as described above in Section 6), even if they have objected to the proposed settlement.

ECF No. 101-2, 9-11.

No objections were filed with the court.

* * *

Court review must not be perfunctory; it is not a ministerial function. As a practical matter, the dynamics of class action settlement may lead the negotiating parties—even those with the best of intentions—to regard the interests of the class too lightly. Under Rule 23(e), the court must assure that any eagerness by the litigants and attorneys to conclude the case without the rigor and cost of trial does not disadvantage class members.

In Re Jiffy Lube Sec. Litig., Civ. No. Y-89-1939, 1990 WL 39127, *5 (D. Md. Jan 2, 1990) (quoting Manual for Complex Litigation (Second) § 30.41).

The court concludes that the settlement entered into between the parties does not disadvantage class members; is fair, adequate, and reasonable; and that it conforms in all respects to the strictures of Rule 23(e). Accordingly, the settlement is approved.

C.    Approval Pursuant to the Class Action Fairness Act

Title 28, United States Code, Section 1715(b) provides:

Not later than 10 days after a proposed settlement of a class action is filed in court, each defendant that is participating in the proposed settlement shall serve upon the

15

appropriate State official of each State in which a class member resides and the appropriate Federal official, a notice of the proposed settlement consisting of–

(1) a copy of the complaint and any materials filed with the complaint and any amended complaints (except such materials shall not be required to be served if such materials are made electronically available through the Internet and such service includes notice of how to electronically access such material);

(2) notice of any scheduled judicial hearing in the class action;

(3) any proposed or final notification to class members of--

(A)(i) the members' rights to request exclusion from the class action; or

(ii) if no right to request exclusion exists, a statement that no such right exists; and

(B) a proposed settlement of a class action;

(4) any proposed or final class action settlement;

(5) any settlement or other agreement contemporaneously made between class counsel and counsel for the defendants;

(6) any final judgment or notice of dismissal;

(7)(A) if feasible, the names of class members who reside in each State and the estimated proportionate share of the claims of such members to the entire settlement to that State's appropriate State official; or

(B) if the provision of information under subparagraph (A) is not feasible, a reasonable estimate of the number of class members residing in each State and the estimated proportionate share of the claims of such members to the entire settlement; and

(8) any written judicial opinion relating to the materials described under subparagraphs (3) through (6).

An order giving final approval of a proposed settlement may not be issued earlier than ninety

days after the later of the dates on which the appropriate federal and appropriate state official are

served with the notice.  Id. 1715(d).

16

Defendants provided notice of the proposed settlement to the South Carolina Department of Insurance and to the United States Attorney General on March 2, 2015. ECF No. 109. On March 5, 2015, the United States Attorney General's office filed a notice of no opposition and waived the remainder of the United States' ninety-day review period. ECF No. 110. On March 19, 2015, the South Carolina Department of Insurance, through class counsel, filed a notice of no opposition and waived the remainder of the South Carolina Department of Insurance's ninety-day review period. ECF No. 112. The requirements of § 1715(b) therefore have been met, and the within order now may be issued.[1]

D.    <u>Attorneys' Fees and Incentive Award</u>

The settlement provides for the class members to pay a pro rata share of class counsel's attorneys' fees, up to $168,326.47, which amount represents thirty-three percent of a common fund of class benefits calculated to be $510,080.22. The settlement also provided for an incentive award to Plaintiff in the amount of $22,919.00. The class notice package provided information to the class members as follows:

### SECTION 8: COUNSEL FOR THE SETTLEMENT CLASS, ATTORNEYS' FEES, AND CLASS REPRESENTATIVE AWARD

The Court has designated the law firms of Richard A. Harpootlian, P.A. and Tobias G. Ward, Jr., PA as Class Counsel for the Class for purposes of settlement of this lawsuit. There is no upfront charge for the services of these or any other law firms representing the Class in this action. You will not be required to pay out of pocket

---

[1] Although the timing requirements of the Class Action Fairness Act were not technically met–i.e., the appropriate governmental officials were not notified of the proposed settlement within ten days after November 4, 2014, the date the proposed settlement was filed–the substance of the requirements have been satisfied insofar as giving federal and state officials sufficient notice and opportunity to be heard regarding the settlement. See In re Processed Egg Prod. Antitrust Litig., 284 F.R.D. 249, 258 n.12 (E.D. Pa. 2012).

any portion of Class Counsel's fees. Class Counsel's fees will be paid in the manner explained below.

You have the right to retain your own attorney to represent you in this matter, but you are not obligated to do so. If you do so, you will be responsible for paying your own attorneys' fees and expenses. You also have the right to represent yourself before the Court without an attorney.

At the Fairness Hearing, Class Counsel will apply to the Court for an award of attorneys' fees and expenses not to exceed $168,326.47. This amount will be paid out of the common fund of Class Benefits calculated as thirty-three percent (33%) of $510,080.22, the total amount of Class Benefits. The Parties agree that any attorneys' fees paid out of a common fund of Class Benefits shall be deducted from each Class Member's Class Benefit on a pro rata basis and that the Settlement Administrator shall be responsible for calculating each pro rata reduction. Class Counsel will be responsible for allocating attorneys' fees and expenses among the law firms that are counsel for the Class and to any others providing services in support of their efforts.

Class Counsel will also request that the Class Representative be awarded a total amount of $22,919.00 as compensation for acting as Class Representative and for past claims. The amount awarded to the Class Representative by the Court will be paid by Philadelphia American and will not reduce any settlement benefits to the Class.

ECF No. 101-2, 11.

On February 21, 2015, class counsel submitted a motion for attorneys' fees in the amount of $168,076.33. ECF No. 106. The motion for payment of fees reflects a reduction in class counsel's initial fee request by a pro rata amount attributable to the one class member who opted out of the class. The individual who opted out was entitled to a reimbursement of $758.02. Thus, the common fund of class benefits has been reduced from $510,080.22 to $509,322.20, and class counsel's request for attorneys' fees has been reduced from $168,326.47 to $168,076.32.[2] ECF No. 106-1, 4.

---

[2] The motion for attorneys' fees appears to contain a scrivener's error ($510,080.22 - 758.02 = $509,322.20, rather than $509,322.22), which error reduces the total amount to which class counsel is entitled to $168,076.32 ($509,322.20 X .33), rather than $168,076.33. The court notes these de minimis revisions for purposes of the maintaining the integrity of the record.

Class counsel further notes that they do not seek additional reimbursement for expenses incurred in the amount of $3,287.85.  See 106-2, 2.

The motion also seeks approval of compensation for past claims and an incentive award to Plaintiff in the amount of $22,919.00.  Class counsel explained to the court that Plaintiff will not be responsible for a pro rata share of the attorneys' fees requested in this case, which results in an incentive award to Plaintiff in the amount of $7,563.27.

1.    Attorneys' Fees.  Fed. R. Civ. P. 23(h) provides:

(h) ATTORNEY'S FEES AND NONTAXABLE COSTS.

In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement. The following procedures apply:

(1) A claim for an award must be made by motion under Rule 54(d)(2), subject to the provisions of this subdivision (h), at a time the court sets. Notice of the motion must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner.

(2) A class member, or a party from whom payment is sought, may object to the motion.

(3) The court may hold a hearing and must find the facts and state its legal conclusions under Rule 52(a).

(4) The court may refer issues related to the amount of the award to a special master or a magistrate judge, as provided in Rule 54(d)(2)(D).

No class member objected to the award of attorneys' fees, which is now calculated to be slightly less than the award set forth in the class notice package.  The first two requirements of Rule 23(h) have been satisfied.

Turning to the third requirement, the court concludes a hearing is not necessary.  However, under Fed. R. Civ. P. 52(a), the court must find the facts specifically and state its conclusions

separately.  Further, pursuant to Local Civil Rule 54.02, D.S.C., counsel is  required to comply with the requirements of <u>Barber v. Kimbrell's Inc.</u>, 577 F.2d 216 (4th Cir. 1978), when seeking an award of attorneys' fees.  According to Rule 54.02, "[t]hese requirements are also relevant when a common fund is created and a percentage-fee method is sought in the application."

As class counsel observe, there are two general methods for assessing awards of attorney's fees in settlements of class action cases: (1) the percentage-of-the-fund method, and (2) the lodestar method.  The percentage-of-the-fund method, also known as the common-fund doctrine, allows attorneys' fees to be based on a percentage of the total recovery to the plaintiff class.  <u>DeWitt v. Darlington Cnty.</u>, C/A No. 4:11-cv-00740-RBH, 2013 WL 6408371 (D.S.C. Dec. 6, 2013) (citing <u>Boeing Co. v. Van Gemert</u>, 444 U.S. 472, 478 (1980)).  Under the common fund doctrine, where a group of individuals receives a benefit from litigation without directly contributing to its costs, the group would be unjustly enriched unless each member is required to contribute a portion of the benefits to compensate the attorneys responsible for creating the common fund.  <u>Id.</u>  The percentage-of-the-fund approach to awarding attorneys' fees in class action cases "'better aligns the interests of class counsel and class members . . . [by] t[ying] the attorneys' award to the overall result achieved rather than the hours expended by the attorneys.'"  <u>Id.</u> (quoting <u>Kay Co. v. Equitable Prod. Co.</u>, 749 F. Supp. 2d 455, 461 (S.D.W. Va. 2010)).  The percentage-of-the-fund approach rewards counsel for efficiently and effectively bringing a class action to a resolution.  <u>Id.</u> (citing <u>Kay</u>, 749 F. Supp. 2d at 461).  Under the percentage-of-the-fund method, courts analyze the following factors:  (1) the results obtained for the class; (2) the quality, skill, and efficiency of the attorneys involved; (3) the risk of nonpayment; (4) objections by members of the class to the settlement terms and/or fees

requested by counsel; (5) awards in similar cases; (6) the complexity and duration of the case; and (7) public policy.  <u>Kay</u>, 749 F. Supp. 2d at 464.

The lodestar method determines the appropriate amount of attorneys' fees by applying the factors set forth in <u>Barber</u>.  These factors include: (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.  <u>Barber</u>, 577 F.2d at 226 n.28.  The loadstar method is used to award attorney's fees to successful plaintiffs after obtaining a judgment at trial in a fee-shifting case.  <u>DeWitt</u> (citing <u>Hensley v. Eckerhart</u>, 461 U.S. 424 (1983)).

Many district courts within the Fourth Circuit employ a modified form of the lodestar method to "cross-check" to ensure that the percentage-of-the-fund method award is fair and reasonable. <u>See</u>, <u>e.g.</u>, <u>Boyd v. Coventry Health Care, Inc.</u>, 299 F.R.D. 451 (D. Md. 2014); <u>Domonoske v. Bank of America, N.A.</u>, 790 F. Supp. 2d 466 (W.D. Va. 2011); <u>Loudermilk Servs., Inc. v. Marathon Petroleum Co.</u>, 623 F. Supp. 2d  713 (S.D.W. Va. 2009); <u>In re The Mills Corp. Sec. Litig.</u>, 265 F.R.D. 246 (E.D. Va. 2009); <u>Smith v. Krispy Kreme Doughnut Corp.</u>, No. 1:05CV00187, 2007 WL 119157 (M.D.N.C. Jan.10, 2007); <u>Edmonds v. United States</u>, 685 F. Supp. 1126 (D.S.C. 1987). Using the percentage method, cross-checked by the lodestar method, reduces the risk that the amount of the fee award either overcompensates counsel in relation to the class benefits obtained or

undercompensates counsel for their work.  Boyd, 299 F.R.D. at 462 n.3 (quoting In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig., 851 F. Supp. 2d 1040, 1073 (S.D. Tex. 2012)).

In this case, class counsel argued the merits of their motion for attorneys' fees solely pursuant to the percentage-of-the fund method.  Given that no party objected to class counsel's requested reimbursement and that the size of the attorneys' fee awarded is not inflated by an extensive number of class members, and that the class members have obtained full recompense for underpayments under their various "cancer and specified disease" supplemental insurance policies, the court is satisfied that the hybrid method to determine the reasonableness of the attorneys' fees requested by class counsel is not necessary.  Accordingly, the court turns to the factors appertaining to the percentage-of-the-fund approach.

a.    Results obtained for the class.  Class counsel assert that they obtained an extraordinary result with respect to the legal issues underlying the case by obtaining a favorable ruling from the South Carolina Supreme Court.  In addition, class counsel were able to negotiate a class settlement that resulted in full payment of damages suffered by each class member, less a pro rata share to be applied to attorneys' fees.

b.    Quality, skill, and efficiency of the attorneys involved.  As set forth hereinabove, class counsel are highly experienced litigators.  Moreover, the court is in complete agreement with class counsel's observation that the result obtained "was uncertain and particularly difficult to obtain given the experience and skill of opposing counsel."  ECF No. 106-1, 9.  Both class counsel and Defendants' counsel demonstrated professionalism, zealous advocacy, and legal expertise.

c.     <u>Complexity and duration of the case</u>.  This litigation has spanned nearly over three and one-half years.  The parties were required to undertake extensive research into constitutional arguments for briefing before the South Carolina Supreme Court.  After the supreme court ruled in favor of Plaintiff, the parties undertook extensive negotiations to reach a settlement, and then were required to satisfy the specialized requirements of Fed. Rule Civ. P. 23 as well as the Class Action Fairness Act in order to bring the settlement to fruition.

d.     <u>Risk of nonpayment</u>.  Class counsel were retained on a contingency basis, not an hourly basis, and to date have received no reimbursement for fees or expenses from Plaintiff.  A contingency fee arrangement placed a substantial risk of loss on class counsel, who would have received no payment for their representation had they not been successful in pressing the legal issue before the South Carolina Supreme court.

e.     <u>Awards in similar cases</u>.  An award of thirty-three percent in a contingent fee arrangement is common and reasonable, as long as the figure is not inconsistent with the actual work performed or excessive because of the size of the class.  <u>See</u> <u>Temp. Serv., Inc. v. American Int'l Group, Inc.</u>, C/A No. 3:08-cv-00271-JFA, 2012 WL 2370523 (D.S.C. June 22, 2012); <u>Leigh v. Bottling Group, LLC</u>, C/A No. DKC 10-0218, 2011 WL 1231161 (D. Md. March 29, 2011); <u>Smith v. Krispy Kreme Doughnut Corp.</u>, No. 1:05CV00187, 2007 WL 119157 (M.D.N.C. Jan.10, 2007).  The court finds class counsel's fee request is neither inconsistent with the work performed, nor excessive because of the size of the class.

f.     <u>Objections</u>.  No objections have been submitted by any class member or other interested party or entity.

23

g.     Public policy.  Public policy favors adequate awards of attorneys' fees in cases such as this, where the complex legal issues and time required to come to a resolution would have precluded recovery by many of the class members on an individual basis because of the relatively modest benefit due to them.

The court finds class counsel's request for attorneys' fees to be reasonable under the percentage-of-the fund method.

2.     Incentive Award.  As part of a class action settlement, named plaintiffs are eligible for reasonable incentive payments.  Smith v. Toyota Motor Credit Corp., Civil No. WDQ-12-2029, 2014 WL 4953751, *17 (D. Md. Oct. 2, 2014) (quoting Stanton v. Boeign Co., 327 F.3d 938, 977 (9th Cir. 2003)).  To determine whether an incentive payment is warranted, the court should consider the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation.  Id.  (quoting Cook v. Niedert, 142 F.3d 1004, 1016 (7th Cir. 1998)).

Plaintiff's efforts succeeded in obtaining full recovery of underpayments due to class members.  Class counsel informs the court that Plaintiff has diligently cooperated with class counsel to investigate and bring this action and has attended court proceedings despite her battle with cancer. The court notes that no party has objected to the amount of the incentive award, which comprises approximately 0.015% of the gross settlement.  The court finds the incentive award to be reasonable and appropriate.

## III.  CONCLUSION

For the reasons stated, the court grants class certification, approves the settlement, and approves attorneys' fees in the amount of $168,076.32.  The court also approves an incentive award

for Plaintiff in the amount of $7,563.27, which amount, when combined with the benefits due to her under the settlement, yields a total payment to Plaintiff of $22,919.00.

**IT IS SO ORDERED**.


/s/ Margaret B. Seymour
Senior United States District Judge

Columbia, South Carolina

March 23, 2015.

25